JAMES CALDWELL *vs.* NATHANIEL DICKINSON.

Bonds of submission to arbitration recited that differences had arisen " concerning the matter that C. demands of D. possession of certain tracts of land," (described,) " which C. alleges D. has without law entered upon and disseised C., and still withholds the possession thereof from him; which differences and all demands concerning the same the parties have agreed to refer ; " and stipulated that the parties should give deeds according to the award. *Held,* that it appeared with sufficient clearness that the matter submitted was the claim of one party to the possession of certain land withheld from him by the other, and that the difference between the parties concerned the true boundary line of their adjoining lots.

*Held, also,* that an award " that the north line, so called, between C. and D. shall be the line established by the survey of R., as exhibited by him at the hearing," and described in the award by metes and bounds, courses and distances, was a sufficient determination of the whole matter submitted.

*Held, also,* that such award was not invalidated by reciting that the submission was between B. and C. of the one part and D. of the other.

Awarding costs, which it is beyond the power of the arbitrators to do, is no ground for refusing specific performance of the residue of the award.

A bill in equity lies to compel the execution of a deed of land, ascertained, by an award of arbitrators agreed upon by the parties to settle the boundary line between their adjoining lands, to belong to the plaintiff.

The parties to a submission bound themselves to perform the award which certain arbitrators should " make and publish in writing under their hands," concerning a boundary line in dispute. The arbitrators executed a paper as an award, and read it to the parties, and signed and delivered copies thereof to them, with an oral statement of the actual decision, and that it was uncertain whether the award expressed it, and that if it did not, it would be afterwards amended so as to conform to their intended decision when the mistakes should be ascertained by an inquiry of the surveyor. The parties then separated, and the chairman of the arbitrators afterwards learned from the surveyor that the line which they had actually agreed on was not correctly stated in the award, and amended accordingly the award which he had retained; but the award was not again presented to the other arbitrators for signature, nor republished. *Held,* that equity would not enforce the specific performance, either of the amended or of the original award

**31** *

BILL IN EQUITY for specific performance. The bill alleged that the plaintiff and the defendant on the 2d of December 1857 executed mutual and substantially similar bonds of submission to arbitration in the sum of $200 each; and that the condition of the defendant's bond was this :

" Whereas differences have arisen and are now pending between the above bounden Nathaniel P. Dickinson on the one part, and the said James Caldwell on the other part, concerning the matter that the said James Caldwell demands of the said Nathaniel P. Dickinson possession of certain tracts of land lying in Northfield aforesaid : One tract bounded easterly on the road leading from Sawyer's Mills to Vernon, running west of the Ponds; northerly on the Hunt lands, so called ; southerly on land occupied by the said James, and turning westerly as far as said James's land extends; also one other tract of land, cornering on the first described tract, being the easterly part of the Prindle Lot, so called, and in possession of said Nathaniel P., measuring from the fence twenty rods westerly to a stone wall; which the said James alleges the said Dickinson has without law entered upon and disseised the said James, and still withholds the possession thereof from him ; and the said Nathaniel P. denies these allegations ; which differences, and all demands concerning the same, the said parties have agreed to refer to the award and determination of Josiah D. Canning, Esq., of Gill, and Charles Pomeroy, Esq. and Joseph Young of Northfield, arbitrators indifferently chosen by and between the said parties ; the said parties agreeing, and it is understood, that the said arbitrators shall make their award and determination agreeably to the principles of law. Now if the said Nathaniel P. Dickinson, his executors and administrators, on his and their part, shall and do in and by all things well and truly observe, perform and keep the award and determination which the said arbitrators or any two of them shall make and publish of or in the premises in writing under their hands on or before the first day of March next, the said parties to give deeds according to the award of the referees, then this obligation to be void, otherwise to remain in full force and virtue."

The bill then averred that the arbitrators, after due notice, hearing and consideration, made, agreeably to the principles of law, the following award :

" Know all men by these presents, that whereas differences and disputes have been and are yet depending and unsettled between James Caldwell and William F. Caldwell of the one part, and Nathaniel P. Dickinson of the other part, for the settling and determining whereof the said parties have submitted themselves, and are become bound each to the other by their several obligations, dated the 2d day of December A. D. 1857, in the sum of two hundred dollars, with conditions therein written to obey, observe and abide by and keep the award, determination and judgment of us, Josiah D. Canning, Charles Pomeroy and Joseph Young, arbitrators indifferently chosen by and between the said parties for the purpose of hearing and determining all matters pending between said parties. Now know ye, that we, the above named and undersigned arbitrators, having met the parties aforesaid, and heard their several allegations, proofs, arguments, and having duly considered the same, do award and determine that the ' north line,' so called, between said James Caldwell and Dickinson shall be the line established by the survey of Ozias Roberts, as exhibited by him to the arbitrators, and known at the hearing as the ' Roberts line,' viz. : Beginning at a stake and stones on the west side of the highway leading from Sawyer's Mills to Vernon, by the Pond, and running S. $83\frac{1}{4}°$ W. 129 rods and 5 links to a stake and stones contiguous to an old stone wall ; thence on said wall S. $7\frac{1}{3}°$ W. 15 rods and 9 links to a corner on land of Moses Caldwell ; each party to pay and satisfy their own witnesses ; and that the costs of this reference, amounting to the sum of twenty eight dollars, be equally shared and paid by the parties aforesaid. Dated at Northfield this sixteenth day of December A. D. 1857."

The bill then averred the plaintiff's offer of a deed, drawn pursuant to the award, to the defendant for execution ; and his refusal to execute it, or to convey, release or confirm the premises to the plaintiff, according to the award ; and prayed for a

specific performance of the agreement contained in the defend‑ ant's bond ; for a conveyance of the land according to the award ; or, if the court should be of opinion that the award, by its own force, fixed and established the lines between the lands of the plaintiff and the defendant, or that for any reason it was the more proper remedy for the plaintiff, that the defendant might show cause why he should not bring an action to try his title ; and for further relief.

The defendant demurred to the bill, and assigned several causes of demurrer, which are sufficiently stated in his argu‑ ment, which was made at September term 1858.

*G. T. Davis & C. Allen*, for the defendant. 1. The bond of submission does not show already what was the matter submit‑ ted ; whether a question of title, or a claim of damages for trespass, or both. If uncertain, parol evidence is inadmissible. *Furber* v. *Chamberlain*, 9 Foster, 405.

2. The award simply fixes a boundary line. This was not within the power of the arbitrators ; and it does not appear that the boundary line described has any reference to both or either of the lots described, or where the line itself should be, as no starting point is definitely fixed.

3. The line is uncertain without referring to a plan, which is not annexed to the award, and is not a public plan or survey, but a private document, not delivered to the defendant, nor in his control.

4. The award does not exhaust the matter submitted, in not determining whether any trespass was committed, or whether there was any wrongful withholding of possession on the one side or the other, or whether any damages should be paid by either party. It is therefore fatally defective. *Smith* v. *Potter*, 27 Verm. 304. *Houston* v. *Pollard*, 9 Met. 164.

5. The award does not require any deed to be given on either side, nor show any occasion for a deed.

6. The award is expressed to be made upon a submission made by the plaintiff and William T. Caldwell of the one part and the defendant of the other part ; whereas the bond set forth submits disputes between the plaintiff alone and the defendant ;

and, in fact, similar disputes between William T. Caldwell and the defendant were submitted to the same arbitrators by another bond.

7. The award exceeds the power of the arbitrators in undertaking to award costs. *Vose* v. *How*, 13 Met. 243. *Peters* v. *Peirce*, 8 Mass. 398. It cannot therefore be enforced by this suit; for equity will not decree specific performance of one portion of an award and reject another portion. See *Nickels* v. *Hancock*, 7 DeGex, Macn. & Gord. 300.

8. If the award itself fixes and establishes the title, the bill should not be sustained; for a deed would add nothing to the legal title; no deed is required by the award; and a real action, or action of trespass, would afford a complete remedy at law in case of dispute between the parties.

*D. W. Alvord*, for the plaintiff.

The decision was made at Boston in June 1859.

METCALF, J. This demurrer cannot be sustained for any of the reasons assigned by the defendant. Neither the condition of the arbitration bond, nor the award of the arbitrators, is expressed in exact terms; but both seem to the court to be reasonably certain. The condition of the bond shows, quite intelligibly, that the parties submitted to the determination of arbitrators the differences between them concerning the plaintiff's claim to the possession of certain pieces of land, and the withholding of him by the defendant from the possession thereof. These differences were manifestly concerning the true boundary line of their adjoining lands. And the arbitrators determined and awarded where that line should thereafter be; giving a description of that line by metes and bounds, courses and distances. This being done, the defendant was obliged by his bond to give a deed to the plaintiff of the land on the plaintiff's side of that line, the possession of which land the defendant had withheld from him. But the defendant, though duly requested, has refused to execute a deed to the plaintiff, releasing and quitclaiming that land to him.

The award, in the opinion of the court, decides the matters submitted to the arbitrators, and is final and complete. It is

not necessary that arbitrators should expressly declare, in an award, that they have decided the matters submitted to them. It is sufficient that this should appear, as it does in the present case, from the contents of the award.

It is clear that this award was made between the parties to the submission, and between them only. The fact was agreed at the argument, that there was a controversy concerning boundary lines of land, not only between the plaintiff and defendant, but also between the defendant and William T. Caldwell, and that these separate controversies were submitted, by separate bonds, to these arbitrators. The recital by the arbitrators, that the plaintiff and William T. Caldwell of the one part, and the defendant of the other part, had submitted their differences, was inaccurate ; but it did not affect the validity of the award, which determines the line " between said James Caldwell and Dickinson," and is silent as to the line between William T. Caldwell and the defendant.

We do not inquire whether the award as to costs is valid or not. Admitting it to be invalid, the other parts of the award may nevertheless be sustained. *Maynard* v. *Frederick*, 7 Cush. 252.

The plaintiff, we think, has not a plain, adequate and complete remedy at the common law, for the breach of the condition of the defendant's bond; but is entitled to maintain this bill. *Jones* v. *Boston Mill Corporation*, 4 Pick. 507, and 6 Pick. 148. *Hodges* v. *Saunders*, 17 Pick. 470. *Demurrer overruled.*

The defendant then filed an answer, and a hearing was had at April term 1859 before *Dewey*, J., who made a report thereof for the consideration of the full court, upon which the case was argued at this term by the same counsel, and so much of which as is material to the understanding of the decision is stated in the opinion by

HOAR, J. The plaintiff brings this bill in equity to compel the execution of a deed by the defendant to him, in pursuance of an award of arbitrators, which he alleges was made and published by them in December 1857. The submission of the parties was by an agreement which bound them to abide by

and perform such award as should be " made and published in writing under the hands " of the arbitrators named in the agreement, on or before March 1st 1858. The question, whether an award has thus been made and published, obviously meets us at the threshold, in our investigation of the case. It is not the province of a court of equity, any more than of a court of law, to make contracts for parties who come before them. Our only duty and power is to enforce by appropriate remedies the contract which the parties have made. The agreement of the defendant to do something, which he has not done, lies at the foundation of the plaintiff's claim.

The case reported shows that the arbitrators met and heard the parties, and agreed upon a decision of their respective rights. A paper, intended as the award, was made, and signed and sealed by the arbitrators; and a copy of it, also signed by the arbitrators, was prepared, and delivered by the arbitrators to the parties respectively. But at the time when the arbitrators met the parties, and read the paper to them, and delivered the copies, it was stated by the chairman that he was uncertain whether the paper expressed correctly what they had in fact decided. Their actual decision was verbally stated by him, with the full concurrence of his associates, and the parties were informed that if the written award did not correctly express this decision, it would afterwards be amended to conform to their intended decision, when the mistake should be ascertained by an inquiry of the surveyor. The parties then separated; the chairman soon after learned from the surveyor that he had not correctly stated in the award the line which the arbitrators had actually agreed on; and he amended the sealed copy which he had retained, so as to make it conform to the decision, as he had told the parties he should do. But the paper, thus altered, was never again presented to the other arbitrators for their signature, nor was any further communication made to the parties respecting it.

It is this altered paper which the plaintiff relies upon in his bill as the award which he seeks to enforce. We can see no just ground for determining that this award was ever made in

writing under the hands of the arbitrators, and published by them. A paper, different in an essential particular, was published, and the parties were informed that the paper thus published was not certainly the award, but that the real award and decision was something else, which was published to them orally and not in writing, and to which they were told the writing would be made to conform. The objection is plain and decisive. When the real award and decision was published to the parties, it was not in writing. After it was put in writing, it was never published. The foundation of the defendant's agreement to perform an award published in writing was never laid; the condition of it was never performed. The plaintiff, therefore, cannot maintain his suit; because the defendant has made no such agreement as is alleged in the bill. His agreement was not to do whatever the arbitrators might decide, but to do what they should make obligatory upon him by a decision made and promulgated in a manner expressly stipulated.

The plaintiff's counsel has suggested an amendment, by which he might found his claim upon the writing as it was originally made and published. But we cannot see that this would avail him; because it is clearly established that that writing did not contain the real decision of the arbitrators, but was made under a mistake, and was only published to the parties with a proviso that it should not be considered as their award, but should be corrected, if the mistake, which was then suspected, should be afterward ascertained. A court of equity could not enforce, as an award, a paper thus erroneous, and thus issued.                                   *Bill dismissed.*